DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the judgment of the Wood County Court of Common Pleas, which sentenced appellant, Ruben Reyes, following his conviction of one count of trafficking in cocaine, and one count of engaging in a pattern of corrupt activity. Upon consideration of the assignments of error, we affirm in part and reverse in part.
 {¶ 2} On March 21, 2002, appellant was indicted on three counts. The first two counts charged appellant with trafficking in cocaine on two different occasions, in violation of R.C. 2925.03(A)(2). The third count charged appellant with engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1). After a four-day jury trial, appellant was found guilty as to Count 1,[1] not guilty as to Count 2, and guilty as to Count 3.
 {¶ 3} At trial, the state presented the following evidence. In the spring of 1999, Agent Michael Ackley, a Wood County Deputy Sheriff assigned to the Drug Enforcement Administration in Toledo, Ohio, received a complaint that drug sales may be occurring at a bar and at bowling alley, both located in Bowling Green, Ohio. Agent Ackley was informed that two individuals, Elias Reyes, Jr. and Elias Reyes, Sr., ("Reyes, Sr.") were involved in these drug sales.
 {¶ 4} Agent Ackley then began conducting his own surveillance in and around both the bowling alley and the bar. Agent Ackley testified to witnessing a lot of "suspicious activity" from "known drug users" in and around the two establishments. Agent Ackley then began working with a confidential informant, and eventually made several drug purchases from "lower level" individuals within the alleged drug organization.
 {¶ 5} Agent Ackley then learned that an individual, Alan Trimble, had phoned the Wood County Sheriff's Department regarding narcotics activity in Wood County. Agent Ackley contacted Trimble, who also began working under Agent Ackley as a confidential informant. During the first week of April 2001, Trimble purchased approximately one-half of a pound of marijuana from Reyes, Sr.
 {¶ 6} An individual named Christina Keener informed Trimble that Reyes, Sr. had cocaine available for purchase. Trimble then informed Agent Ackley, which prompted Agent Ackley to make arrangements for a two-ounce cocaine purchase from Reyes, Sr. Agent Mark Apple, working in an undercover capacity, was to accompany Trimble during this transaction.
 {¶ 7} On April 13, 2001, Agent Apple and Trimble went to a Bob Evans parking lot in Perrysburg, Ohio, to meet Reyes, Sr. Upon his arrival, Reyes Sr. requested that Agent Apple and Trimble follow his vehicle to another location. Agent Apple and Trimble followed Reyes Sr.'s vehicle, while Reyes Sr. followed another vehicle driven by an individual named Carl Hartford. The three vehicles arrived at Hartford's home located in Perrysburg Township.
 {¶ 8} Agent Apple and Trimble remained in their vehicle, while Hartford and Reyes, Sr. entered Hartford's home. Reyes, Sr. then exited the home and informed Agent Apple and Trimble that he did not have any plastic baggies to package the cocaine. Trimble handed Reyes, Sr. a plastic bag, and Reyes, Sr. re-entered Hartford's home. Appellant then exited Hartford's home, briefly acknowledging Trimble. Shortly thereafter, Reyes, Sr. exited Hartford's home and handed Agent Apple a plastic bag containing two-ounces of cocaine in exchange for $2,400 in cash. This transaction was the subject of Count 1, for which the jury found appellant guilty.
 {¶ 9} On April 19, 2001, Agent Apple purchased four and one-half ounces of cocaine from Reyes, Sr. This transaction was the subject of Count 2, for which the jury found appellant not guilty. On April 30, 2001, agents executed search warrants at Keener's residence, Reyes Sr.'s residence, and Hartford's residence. Various items of contraband were seized from all three residences. After the three individuals were arrested and charged, Keener, Reyes, Sr., and Hartford agreed to cooperate with the state and testify against appellant in exchange for reduced charges.
 {¶ 10} Keener testified that while she never met appellant, she allowed Reyes, Sr. to use her phone to make calls to his nephew, who was providing him with drugs and whom he called "Mahoney." Keener testified that the purpose of these phone calls was to obtain drugs. Reyes, Sr. testified that he used Keener's phone to complete drug sales, and that appellant is his nephew, who he refers to as "Mahoney."
 {¶ 11} Reyes, Sr. further testified that he obtained the cocaine that he sold to Agent Apple and Trimble on April 13, 2001 from Hartford. Reyes, Sr. testified that "as far as [he knew]", Hartford obtained the cocaine from appellant, who had obtained two kilograms of cocaine from the state of Washington. Reyes, Sr. also testified that because appellant never discussed the cocaine with him, he doubted that the cocaine did in fact come from appellant.
 {¶ 12} Hartford testified that appellant informed him that he had two kilograms of cocaine, which appellant had obtained from the state of Washington. Hartford testified that shortly thereafter, Hartford drove appellant to Hartford's home, and appellant had with him "two big blocks" of what appeared to be cocaine. Hartford testified that he allowed appellant to stay in an empty bedroom in his house. Hartford testified that on occasion, appellant's uncle, Reyes, Sr., came to Hartford's home to obtain cocaine from appellant.
 {¶ 13} Hartford testified that in April 2001, appellant asked him to meet his uncle, Reyes Sr., at a Bob Evans parking lot. Hartford agreed, and after meeting and conversing with Reyes Sr. in the parking lot, Hartford, followed by Reyes Sr., who was followed by another vehicle, drove back to his home. Hartford testified that upon arriving at his home, Hartford and Reyes Sr. entered Hartford's home, where appellant was waiting. Hartford testified that the individuals in the other vehicle remained outside, waiting in Hartford's driveway.
 {¶ 14} Hartford went on to testify that because there was nothing to package the cocaine in, Reyes Sr. exited Hartford's home and obtained a plastic bag from the individuals who waited outside. Harford testified that Reyes Sr. re-entered the home with the plastic bag, at which point appellant and Reyes Sr. packaged the cocaine. Reyes Sr. then exited Hartford's home, and sold two ounces of cocaine to Trimble and Agent Apple, who were the individuals waiting outside. Agent Ackley immediately met Agent Apple and Trimble, where he debriefed them and recovered the substance they purchased, which was later determined to be cocaine. This was the April 13, 2001 transaction.
 {¶ 15} At the conclusion of the state's case in chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion, and the case went to the jury. After the jury returned its verdict, the trial court asked the jury to deliberate and decide whether one of the predicate acts comprising the corrupt activity offense was or was not "the incident of trafficking in cocaine for which [it found appellant] guilty in count 1." After further deliberation, the jury found that "one incident of corrupt activity" comprising the corrupt activity offense was the "trafficking in cocaine offense for which we found [appellant] guilty in count 1."
 {¶ 16} The trial court sentenced appellant to consecutive sentences of four years incarceration for Count 1, and nine years incarceration for Count 3. Appellant now appeals this sentence, setting forth the following assignments of error:
 {¶ 17} "I. The trial court erred to the prejudice of Mr. Reyes when it failed to require the jury to find, beyond a reasonable, [sic] at least two predicate acts for the continuing criminal enterprise conviction (count three), in violation of his due process right under the Fifth, Six, and Eighth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.
 {¶ 18} "II. The trial court erred to the prejudice of Mr. Reyes by denying the motion for acquittal presented by the defense at the conclusion of the presentation of evidence.
 {¶ 19} "III. The trial court erred to the prejudice of Mr. Reyes when it sentenced him to consecutive sentences based on facts not found by the jury or admitted by appellant"[2]
 {¶ 20} We will address appellant's assignments of error in order of their relevance.
 {¶ 21} In his second assignment of error, appellant asserts that the trial court erred when it denied his Crim.R. 29 motion for judgment of acquittal. When reviewing the denial of a Crim.R. 29(A) motion, an appellate court must evaluate whether "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." See State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim. See State v. Carter (1995), 72 Ohio St.3d 545, 553.
 {¶ 22} Sufficiency of the evidence is a question of law on whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 23} Appellant asserts that there was insufficient evidence upon which to convict him of trafficking in cocaine. We do not agree.
 {¶ 24} The weight to be given to the evidence and to the credibility of the witnesses is primarily within the province of the jury. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. R.C.2925.03(A)(2) provides that no person shall knowingly "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 25} In this case the state presented multiple witnesses who testified as to their knowledge of appellant's involvement in the April 13, 2001 transaction. The jury was informed which witnesses agreed to cooperate with the state and testify against appellant in return for reduced charges. The jury was therefore aware of the witnesses' potential interest in their testimony, lack of credibility, and any inconsistent testimony. After reviewing the record, we find that the state presented sufficient evidence upon which a rational trier of fact could have found appellant guilty of trafficking in cocaine. Appellant's second assignment of error on the trafficking in cocaine offense is not welltaken.
 {¶ 26} As to Count 3, appellant asserts that there was insufficient evidence upon which to convict him of engaging in a pattern of corrupt activity. We agree.
 {¶ 27} R.C. 2923.32(A)(1) states: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of an enterprise through a pattern of corrupt activity." As used in the statute, "`[e]nterprise' includes any individual * * * organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). The term includes "illicit as well as licit enterprises." Id. "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related that they constitute a single event. R.C. 2923.31(E).
 {¶ 28} While the two or more predicate acts comprising the pattern of corrupt activity need not be supported by convictions, their occurrence must be proved beyond a reasonable doubt. State v. Burkitt (1993),89 Ohio App.3d 214, 222-23. Moreover, when a defendant is charged with engaging in a pattern of corrupt activity, the indictment must set forth the requisite predicate acts comprising the offense. State v.Warden, 6th Dist. No. WD-03-065, 2004-Ohio-6306, at ¶ 48. Such predicate acts may be contained in the other counts of the indictment. Id.
 {¶ 29} In a criminal trial, the trial judge's instructions to the jury regarding the elements of the crime charged are the only means of ensuring that the state has satisfied its burden of proving each element of the crime beyond a reasonable doubt. State v. Stacy, 12th Dist. No. CA2002-03-073, 2003-Ohio-4752, at ¶ 7, citing Glenn v. Dallman,686 F.2d 418, 421 (C.A.6, 1982). Failure to instruct the jury as to the elements of a crime is not corrected just because a reviewing court decides, after the fact, that sufficient evidence existed to support conviction. Id.
 {¶ 30} In the instant action, appellant was indicted on two counts of trafficking in cocaine, Counts 1 and 2, and one count of engaging in a pattern of corrupt activity, Count 3. The state correctly points out that some courts have held that so long as a predicate act is set forth in the bill of particulars and the defendant is afforded ample opportunity to defend against the occurrence of the act, such an un-indicted offense can serve as a predicate act. See, e.g., State v. Siferd,151 Ohio App.3d 103, 2002-Ohio-6801, at ¶ 2.
 {¶ 31} However, in those cases where an un-indicted offense served as a predicate act to support a conviction for engaging in a pattern of corrupt activity, the judge instructed the jury as to the elements of the un-indicted offense. The critical difference in this case is that the trial judge never instructed the jury on any un-indicted offense. Moreover, while the state alleges that the bill of particulars in this case charged that appellant committed another offense, possession of two kilograms of cocaine, the record before us lacks any such bill of particulars.
 {¶ 32} The trial judge instructed the jury on Counts 1 and 2, and regarding Count 3, engaging in a pattern of corrupt activity, the judge instructed the jury as follows:
 {¶ 33} "Before you can find the [appellant] guilty, you must find beyond a reasonable doubt that from the 13th day of April, 2001 continuing through May 14, 2001, the [appellant], being employed by, or associated with, an enterprise, conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * * Pattern of corrupt activity means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are so closely related to each other and connected in time and place that they constitute a single event."[3]
 {¶ 34} Pursuant to R.C. 2923.31(E), in order to find the appellant guilty of engaging in a pattern of corrupt activity, the jury had to find, beyond a reasonable doubt, that appellant committed two or more predicate acts that are not so closely related that they constitute the same event. The jury specifically found that the act upon which it found the appellant guilty of in Count 1 served as one of the predicate acts. However, the jury's explicit not guilty verdict on Count 2 establishes that the state failed to prove its occurrence beyond a reasonable doubt. Finally, because the jury was not instructed as to the elements of any
un-indicted offense, it could not find beyond a reasonable doubt, that appellant committed any un-indicted offense. See State v. Adkins (2000),136 Ohio App.3d 765, 782-83 (holding that the trial court's failure to instruct the jury on an essential element of a predicate offense precluded its use to support a conviction for engaging in a pattern of corrupt activity).
 {¶ 35} In sum, with a not guilty verdict on Count 2, and no jury instruction as to any other offense that could serve as a predicate act, the state proved only one predicate act beyond a reasonable doubt. Because R.C. 2923.31(E) requires that the state prove the occurrence of two or more predicate acts beyond a reasonable doubt, there was insufficient evidence upon which the jury could convict appellant of engaging in a pattern of corrupt activity. See State v. Coleman, 2d Dist. No. 2002-CA-17, 2003-Ohio-5724, at ¶ 46.
 {¶ 36} We find appellant's second assignment of error regarding the pattern of corrupt activity conviction to be well-taken. Because our decision renders appellant's first and third assignments of error moot, we decline to address them.
 {¶ 37} Accordingly, the judgment of the Wood County Court of Common Pleas as to Count 3, engaging in a pattern of corrupt activity, is reversed. The judgment is affirmed as to Count 1, trafficking in cocaine. Costs of this appeal are to be assessed to appellant and appellee equally.
Judgment reversed in part and affirmed in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J. and Singer, P.J. concur.
[1] Because the jury found that the trafficking offense did not occur "in the vicinity of a juvenile", the offense was reduced to a felony of the third degree.
[2] Appellant supports this assignment of error by alleging that the trial court violated Blakely v. Washington (2004), ___ U.S. ___,124 S.Ct. 2531, when it sentenced him to consecutive sentences. While it has no bearing on our holding in the instant action, we note that this court has held that Blakely is inapplicable to Ohio's sentencing scheme.State v. Curlis, 6th Dist. No. WD-04-032, 2005-Ohio-1217.
[3] While the correct definition of "pattern of corrupt activity" is that the acts "are not so closely related to each other * * *," this omission has no bearing on our decision.